# Wytheville.

EQUITABLE FIRE AND MARINE INSURANCE COMPANY,
PROVIDENCE, R. I. v. P. V. STIEFFENS.

June 12, 1930.

Absent, Campbell and Holt, JJ.

The opinion states the case.

*Tazewell Taylor*, for the appellant.

*Allan D. Jones* and *Franklin O. Blechman*, for the appellee.

GREGORY, J., delivered the opinion of the court.

P. V. Stieffens conducted a retail store in Newport

News and his principal business was the sale of various kinds of tobacco, soft drinks and notions. He had a stock of goods in his store and his surplus stock stored in a room on the second floor of the adjoining building. The dimensions of this room were approximately twelve by fourteen feet. The Equitable Fire and Marine Insurance Company, on September 27, 1926, wrote a policy of insurance on this merchandise, insuring Stieffens against loss and damage by reason of fire. On September 26, 1927, a fire occurred and a portion of the stock was burned, resulting in a loss to Stieffens. The adjuster of the insurance company and Stieffens could not agree on the extent of the loss, so under the following provision in the policy the extent of the loss and damage was submitted to appraisers:

"Appraisal. In case the insured and this company shall fail to agree as to the amount of loss or damage, each shall, on the written demand of either, select a competent and disinterested appraiser. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in the State in which the property insured is located. The appraisers shall then appraise the loss and damage stating separately sound value and loss or damage to each item; and failing to agree, shall submit their differences only to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of sound value and loss or damage. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally."

An appraiser's agreement was entered into on October 12, 1927, and signed by both parties. Stieffens

selected C. L. Cornelius and the insurance company selected E. H. Seldon and they duly qualified as appraisers on October 14, 1927, as provided by the terms of the policy. Later the two appraisers selected an umpire, but his services were not needed as the appraisers were in accord as to the extent of loss and damage. The appraisers made their award on October 14, 1927, fixing the loss sustained at $500.00. Stieffens excepted to the award and filed a suit to set it aside. The material allegations in the bill in substance are that complainant was not permitted to be heard or to present evidence of the loss and damage, particularly that they refused to inspect his books, accounts, invoices and other important data which would have been of value to show the loss and damage. It is also alleged that the appraiser, Seldon, selected by the insurance company was not a competent appraiser because he had, on numerous occasions, been employed in a like capacity by the defendant company in appraisals, and therefore was rendered incompetent by the terms of the policy and the Virginia statute, which required that a competent disinterested appraiser should be selected. It is further alleged that this fact was known to the insurance company but not known to the complainant.

The insurance company filed its answer denying the allegations made in the bill and insisting that the award of $500.00 be sustained.

All questions of law and fact were submitted to the court. The evidence was heard in open court and on the 5th day of June, 1929, the court entered its decree setting aside the award because the appraisers failed to take into consideration the evidence offered by the complainant to show the amount of his loss and damage, and the arbitrator appointed by the defendant

was not competent to act as such under the Virginia law. The court then awarded the complainant judgment against the defendant for $3,714.69 with interest from October 27, 1927, and costs.

The amount of the judgment, $3,714.69, rendered in favor of Stieffens, was found by the trial court by accepting unqualifiedly the calculation made by Stieffens. The calculation was made by starting with an inventory as of January 1, 1927, adding to this inventory all purchases made during that part of the year prior to the fire and deducting from the total of inventory and purchases, the sales. The difference between this result and the inventory taken after the fire amounted to $2,276.36, and that amount represented the goods in the storage room, all of which were completely consumed by the fire. No goods in the store room proper were burned but it was contended by Stieffens that they were damaged by smoke. The inventory disclosed that goods to the value of $2,876.66, were in the store room and it was claimed that this stock was damaged by smoke fifty per cent or to the extent of $1,438.33, and adding this amount to $2,276.36, we find the result to be $3,714.69, the amount of the judgment.

There are three assignments of error, but in the final analysis it is only necessary to decide two questions; first, was Seldon, the appraiser selected by the insurance company, competent and second, did the appraisers refuse to consider material evidence offered by Stieffens, to show his loss and damage.

The evidence discloses that Seldon, the appraiser selected by the insurance company, had on numerous occasions acted in a similar capacity for the Southern Adjustment Bureau and that this bureau acted for the insurance company in its attempt to adjust the loss

and damage involved in this case, but there was no evidence that he had at any time been employed by the insurance company. His regular employment is the operation of a manufacturing establishment in Richmond, Va. The evidence further shows that he has no interest in the insurance company or the Southern Adjustment Bureau and that he draws no salary from either, and when he is selected as an appraiser, he is paid on a *per diem* basis. He had no interest in the matter and from that standpoint was competent.

It is contended that Seldon was rendered incompetent by the Virginia statute, Code section 4309, which provides that the "said arbitrators and umpire * * * are not in any manner in the employment of nor related to any individual affected thereby, or in the employment of any insurance company."

This statute has been recently construed in the case of *Hurst* v. *Hope*, 152 Va. 408, 409 and 410, 147 S. E. 222. There it was held: "It may readily be conceded that neither the insured nor the insurance companies should select as their arbitrators men on their payroll.

" 'It is fundamental to the conception of such an appraisement—which is in effect an arbitration—that the persons selected to make it should be free from the control and direction of the respective parties whose interests have been confided to them, and should act independently and upon their own judgment.' *Connecticut, etc., Insurance Company* v. *Cohen*, 97 Md. 294, 55 Atl. 675, 99 Am. St. Rep. 445.

"This does not mean that the arbitrator is not to be paid by the party who retains him. He must be so paid by the express terms of the contract of insurance.

"So far as is shown by the record, Hurst and

Hope were strangers up to the time of his selection. If we were to adopt the construction contended for, the statute would be inoperative, for the arbitrator when secured would immediately become an employee, and would, by the very act of his selection, be made ineligible to serve. Certainly anything which he afterwards did to qualify himself to serve would disqualify him. All that the statute means to say is that he shall not be regularly retained; that there must be no continuity of employment. 'Employment' and 'employee' are terms sometimes used to cover services of every kind, but not always. An attorney serving as division counsel for a railroad, and regularly retained, is an employee (*Seaboard Air Line Railway* v. *Continental Trust Co.*, [C. C.] 166 Fed. 597), while one retained for a single suit is not (*Hand* v. *Cook*, 29 Nev. 518, 92 Pac. 3).

"In *Boston & A. R. Co.* v. *Mercantile Trust & Deposit Co.*, 82 Md. 535, 34 Atl. 778, 38 L. R. A. 97, the court was called upon to distribute funds of an insolvent corporation. Employees were given a preference under the statute. It was there held that not everyone employed was an employee; an insurance adjuster was not. The court went on to say: 'The word "employee" as used in the statute was intended to have a limited meaning and that it cannot be applied in its broadest sense or as including everyone in the service or employment of a corporation or individual.' To the same effect is *Lewis* v. *Fisher*, 80 Md. 139, 30 Atl. 608, 26 L. R. A., 278, 45 Am. St. Rep. 327.

"Among other definitions given in Bouvier is this: 'It is understood to mean some permanent employment or position.'

"Tested by these rules, we are of opinion that Hope was not in the employment of Hurst, as that term is

used in the statutes. He was retained for special service, and all of the work done by him was done that he might discharge these special duties intelligently. Without this necessary advance information, secured in a proper way, he would have been worthless as an arbitrator. If he is to be paid at all for his preliminary investigation, it is not seriously contended that the judgment is unreasonable, and certainly it is supported by ample evidence. There was nothing immoral or against public policy in anything that was done, and so the judgment must stand unless it runs counter to the statute. The defendant's naked proposition that Hope was, because of his employment, ineligible to serve is untenable."

It is clear that this court in that case has settled the question in Virginia. What was there said applies to the case under consideration and we deem it unnecessary to further discuss this proposition. The Virginia statute was not violated by the selection of Seldon as an appraiser. This being true we are brought to the consideration of what circumstances an award of competent arbitrators will be set aside.

An award properly made by competent arbitrators bars an action on the original cause. "It will not be set aside except for errors apparent on its face, misconduct on the part of the arbitrators, some palpable mistake or fraud in one of the parties" * * *. *Bassett's Adm'r* v. *Cunningham*, 9 Gratt. (50 Va.) 688. Innumerable cases, in this and other jurisdictions, might be cited to sustain the law handed down in that early Virginia case.

"Boards of arbitrators, which are courts of the parties' own selection, are favored by the law and every fair presumption is made in order to sustain their award." *Coons* v. *Coons*, 95 Va. 434, 28 S. E. 885, 886, 64 Am. St. Rep. 804.

█ The burden of proof in a suit of this nature is upon the complainant. It is his duty to prove clearly and unequivocally the misconduct of the arbitrators or that they refused to consider material evidence, or that one of the parties was guilty of fraud.

██ Stieffens was confronted, in his task to set aside the award, with (a) the conclusive and binding effect of the award, (b) the presumption of law in its favor and (c) with the burden of proving convincingly the misconduct of the arbitrators, or that one of the parties was actuated by fraud.

To meet and overcome these obstacles, he attempts to prove by inventories, invoices and sales, that inexpensive merchandise of the character usually found in stores of this kind, to the value of $2,276.66 (when there was only $2,876.00 in the store proper), were stored prior to the fire in a storage room twelve by fourteen feet in dimensions, burned, and the remains dropped through an opening in the floor three feet wide and fourteen feet in length, and no merchandise found on the remaining portion (three-fourths) of the storage room floor. In order to sustain his contention the court must believe that merchandise of this character and value was stored in an ordinary room in a space three feet wide and fourteen feet long, and that merchandise entirely consumed by the fire without a vestige remaining.

Such is contrary to human experience and the laws of nature. It is highly improbable and incredible, and as held in the case of *N. & W. Ry. Co.* v. *Strickler*, 118 Va. 153, 86 S. E. 824, 825, "though the case be heard as upon a demurrer to the evidence the court will not stultify itself by allowing a verdict to stand * * * when the physical facts demonstrate such evidence to be untrue" * * *.

Certainly such improbable and unreasonable evidence does not meet the legal requirements and is not sufficient to overcome the binding effect of any award and the presumption of law in its favor. For the stock of goods burned in the storage room the arbitrators allowed the sum of $500.00.

The stock of merchandise in the store room proper, which was twenty-five by sixty feet in dimensions, contained prior to the fire, according to the inventory, merchandise valued at $2,876.66. No part of this stock was burned but Stieffens claimed that it was damaged by smoke fifty per cent. The arbitrators inspected these goods and found that they were not damaged and nothing was allowed by them for any damage to this stock.

In discussing the method followed by appraisers the Court of Appeals of New York, in the case of *Ice Service Co.* v. *Henry Phipps' Estates*, 245 N. Y. 393, 157 N. E. 506, 508, and 53 A. L. R. 696, has this to say:

"They left it to the experience and fairness of the men to be selected. It is not necessary for appraisers to fix a value which can be sustained and justified by evidence in a court of law. Their valuation is final by agreement of the parties if they have acted reasonably, fairly and in an honest attempt to get the real and true valuation. Their conclusion cannot be set aside by a court of equity merely because real estate experts on a hearing in court fix a higher valuation, or because the amount is higher or lower than we or other judges would be inclined to allow. The parties have made the appraisers the judges—the court of last resort—unless they have mistaken their authority, departed from the submission, clearly misconceived their duties, acted upon some fundamental and apparent mistake, or have been moved by fraud or bias."

To permit an award to be set aside under the circumstances of this case would render nugatory the contract of the parties to be bound by the appraisals. It would be useless for the standard fire policy to embody any provision for submitting the loss and damage to appraisers.

After carefully reading all of the evidence we are convinced that the trial court was not justified in disturbing the award. Therefore the decree complained of will be reversed and judgment granted the complainant for $500.00, the amount of the award, with interest thereon from December 12, 1927, in accordance with the terms of the policy.

*Reversed and final judgment.*