# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## COONS *v.* COONS.

DECEMBER 9, 1897.

1. ARBITRATION AND AWARD—*Appointment of Third Arbitrator—Notice to Parties—Opportunity to be Heard.*—Where two arbitrators, who have power to appoint a third in case of their disagreement, disagree, and make the appointment, it is necessary to inform the parties in interest of the appointment, and give them a reasonable opportunity to produce evidence touching the matters in controversy. In the absence of an agreement to that effect, it is not sufficient for the third arbitrator to derive his knowledge of the evidence from the other arbitrators. The case should be reheard by him.

2. CHANCERY JURISDICTION—*Parties Before Court—Legal Defences—Complete Relief.*—Every party in interest being before the court on a bill to set aside an award, on grounds which unquestionably give the court jurisdiction, and the award having been set aside, the court may decide the whole controversy, and render a final decree, though all the issues are legal in their nature, capable of being tried by a court of law, and the legal remedies therefore adequate. The jurisdiction having once attached, the court will retain the case, and grant the complete relief prayed for.

Appeal from a decree of the Circuit Court of Culpeper county pronounced December 30, 1895, in a suit in chancery wherein the appellant was the complainant, and the appellee was the defendant.

*Reversed.*

The opinion states the case.

*G. D. Gray, J. L. Jeffries* and *L. L. Lewis,* for the appellant.

*Rixey & Barbour* and *J. C. Gibson,* for the appellee.

KEITH, P., delivered the opinion of the court.

J. W. Coons and H. C. Coons having a controversy as to their respective rights in certain property, real and personal, and H. C. Coons claiming that upon certain accounts between them a balance would be found due to him, the parties agreed by writing under seal to submit their differences to "Alwyn Jameson and C. J. Rixey to arbitrate matters in controversy between us as stated below, with power to mutually agree on a third arbitrator to decide any difference that they may not be able to agree upon. The matters in controversy to be decided are all accounts and property, in which we are jointly interested. We agree and bind ourselves to abide by the decision of the said arbitrators.

Witness our hands and seals, this 27th day of May, 1892.

J. W. Coons (Seal.)<br>
H. C. Coons (Seal.)"

The parties appeared before the board of arbitrators in person, and each introduced witnesses, and, the arbitrators failing to agree, they, in accordance with the terms of submission, selected G. B. W. Nalle, who made an award in which Jameson united, by which it was ascertained that J. W. Coons should pay to H. C. Coons $4,482.70, one-third in cash, and the balance in two years, with six *per cent.* interest, to be secured to the satisfaction of H. C. Coons, to be in full settlement of all claims on the part of H. C. Coons against J. W. Coons. When the award was first promulgated, J. W. Coons, while expressing great dissatisfaction with it, appears to have intended to abide by and execute it, and, with that end in view, had the necessary papers prepared, which, when submitted to H. C. Coons, did not meet the approbation of himself, or of his counsel. The delay consequent upon his objection resulted finally in an investigation on the part of J. W. Coons as to the mode of procedure upon

the part of the arbitrators, and as a result of that investigation, he determined to resist the award. Some time thereafter H. C. Coons instituted an action of covenant upon the award, and thereupon J. W. Coons filed his bill in the Circuit Court of Culpeper county, in which he makes H. C. Coons a defendant, and attacks the award of the arbitrators:

*First,* because it fails to pass upon certain matters included in the submission;

*Second,* because it does pass upon matters not included in submission;

*Third,* because upon its face the award is erroneous, in violating the provisions of the statute of limitations;

*Fourth,* because of misconduct upon the part of one of the arbitrators; and

*Fifth,* because the umpire or third arbitrator "without giving any notice to your orator, and without his knowledge or consent, and without hearing any evidence, made up his award solely and exclusively upon the statements of the two arbitrators made in the absence and without the knowledge of your orator, and thus your orator's cause was adjudged and decided without a hearing, contrary to all law, human and Divine."

The bill prays that H. C. Coons may be enjoined from the further prosecution of the action at law brought by him, and an injunction was awarded.

The answer of the defendant denies all the equities set up in the bill, gives a statement of the transactions out of which the original controversy grew, and concludes with the prayer that it may be treated as a cross-bill, and relief afforded him in the event the court should be of opinion that the award was for any cause invalid. The answer treated as a cross-bill was itself answered by the plaintiff, J. W. Coons, and upon the issues thus made much testimony was taken, and, the cause coming on finally to be heard before the Circuit Court, the bill of the plaintiff was dismissed; and thereupon he applied for and obtained an appeal from one of the judges of this court.

In the view we have taken of this case it will be only necessary to consider the effect upon the award of the failure of the arbitrators to give notice of the appointment of the third arbitrator, and to have the case reheard if either of the parties desired to do so.

The evidence upon this point is that upon the disagreement of Jameson and Rixey, they in the first place selected B. W. Stringfellow, who was objected to by J. W. Coons on account of some supposed connection between him and the wife of H. C. Coons; thereupon the arbitrators agreed upon G. B. W. Nalle, who consented to serve. J. W. Coons denies that he was ever notified of Nalle's appointment, and there is no proof of the fact. It does appear that about one o'clock on the day that the award was made, J. W. Coons was in the town of Culpeper, and that he was then informed that the arbitrators were in session, and about four o'clock of the same day their award was announced.

Taking the facts proved, and deducing from them all the inferences with which J. W. Coons could with propriety be affected, the case stands thus: He knew that he had submitted this controversy to the arbitrament of Jameson and Rixey. He knew that they had been unable to agree, and that, in pursuance of the authority vested in them by the terms of the submission, they had appointed a third arbitrator to whom he had objected, and on learning that the board was in session on the day that the award was made, he may be presumed to have known that choice of a third arbitrator had been made. But assuming all this to be so, and nothing more than this can be imputed to him, was he not then justified in assuming that the board would proceed in accordance with the law, and notify him of their readiness to hear any testimony he might desire to adduce? This brings us to the consideration of the question as to what is the duty of arbitrators under such circumstances, for that he had a right to assume that they would perform their duty in accordance with the law in a regular and orderly manner cannot be denied.

Boards of arbitration, which are courts of the parties own selection, are favored by the law, and every fair presumption is made in order to sustain their award. This, we believe, is the universal rule applied to the interpretation of the agreement to submit, and to all the proceedings which lead up to, and result in, the award.

In *Pollock* v. *Sutherlin,* 25 Gratt. 78, Judge Moncure says: "All fair presumptions shall be made in favor of an award; and if, on any fair presumption, the award may be brought within the submission, it shall be sustained."

But there are certain immutable principles with reference to the administration of justice which cannot be disregarded in any tribunal which undertakes to pass upon the rights of others. "It is a cardinal principle in the administration of justice that no man can be condemned, or divested of his rights, until he has had the opportunity of being heard, and, if judgment is rendered against him before that is done, the proceedings will be as utterly void as if the court had undertaken to act where the subject matter was not within its cognizance." *Bloom* v. *Burdick,* 1 Hill 130.

"Jurisdiction of the cause and parties is essential to the conclusiveness of a judgment or decree. To acquire jurisdiction of the defendant, it is necessary that in some appropriate way he be notified of the pendency of the suit. If, upon the inspection of the record, it appears that no such notice has been given, the judgment or decree is void." *Wilcher* v. *Robertson,* 78 Va. 616.

"Notice and an opportunity to be heard are essential requisites to the jurisdiction of all courts, and judgment without jurisdiction is a nullity." *Dorr* v. *Rohr,* 82 Va. at page 363; *Staunton Perpetual B. & L. Co.* v. *Haden,* 92 Va. 201, and authorities cited.

And while there seem to be adjudged cases in which this rule has been somewhat relaxed as to arbitrations, they do not meet with our approval. The injustice is the same, and the injury as great, to deprive one of a right without a hearing before arbitrators as before a court.

In *Day* v. *Hammond*, 57 N. Y. 497, it is held that " parties are always entitled to a hearing before arbitrators unless that hearing is waived; and that if an umpire or other arbitrator is called in, in case of disagreement, the same rule as to a right of rehearing applies.    The waiver of this right must be distinct and unequivocal."    And in *Elmendorf* v. *Harris*, 23 Wend. 628: " If an umpire decides without having appointed a time for hearing, and without giving notice of it to a losing party, the award is a nullity in a court of law."

The case of *Hall* v. *Lawrence*, 4 Term, 589, has led to much controversy.    It seems to hold that the parties need not be notified, or be given an opportunity for the introduction of evidence, or have their case reheard before a third arbitrator. It is generally considered that the case turned upon the doctrine of waiver, and upon that suggestion only can it be supported.    In *Day* v. *Hammond, supra,* it is said: " *Hall* v. *Lawrence* has sometimes been misunderstood as deciding a general rule in the law of arbitrations.    Its effect should be limited to the proposition that parties may waive their clear and indisputable right to a rehearing of the cause.    To that extent it is sound law."

In *Salkeld* v. *Slater*, 12 Ad. & El. 767, Chief Justice Denman says: " It is important to have it understood that the umpire, as well as the arbitrators, ought to hear and see the witnesses.    The objection to a different course may be waived, but more complete proof of waiver should be given than in the present case."    See also *Goldsmith* v. *Tilly*, 1 Har. and John. 361; *Thomas* v. *West Jersey R. R. Co.*, 24 N. J. Eq. 567; *Shivey* v. *Knoblock*, 8 Moon, 433; *Lutz* v. *Linthican*, 8 Peters, 165.

Russell on the Power and Duty of Arbitrators, p. 228, says: "The umpire (and the duty of an umpire is universally regarded as indentical with that of the third arbitrator), when called upon to act, is in general invested with the same powers as the arbitrators, and bound by the same rules, and has to perform the

same duties. He must pursue the same regular course with respect to the conduct of the case, as if he were commencing a new case as arbitrator. He must examine such witnesses as the parties choose to produce, and as to such points as they choose to raise, although the same witnesses have been examined to the same points before the arbitrators. He may not take the evidence, or any part of it from the notes of the arbitrators, unless there be a special provision in the submission, or a clear agreement between the parties permitting such a course."

We deduce from the authorities the general rule that where two arbitrators who differ have the power to appoint a third, who shall have authority to decide between them, it is necessary to inform the parties in interest of his appointment, and give them a reasonable opportunity to produce evidence before them touching the matters in controversy.

J. W. Coons was never informed of the appointment of the third arbitrator. As far as the record shows it came to his knowledge casually, while in the town of Culpeper. He seems to have known that the board was in session, but as he only arrived in the town at one o'clock p. m., and the award was announced at four o'clock on the evening of that day, we think the facts are insufficient to charge him with having waived his right to appear, or having acquiesced in the denial of an opportunity to introduce witnesses in his behalf. It is unnecessary to cite authorities upon this point. The cases already alluded to as to the duty of the arbitrators to rehear, afford abundant support for the proposition that, while the right under consideration may be waived, evidence of the waiver must be clear and conclusive.

It is contended on behalf of the appellees that there has been a ratification of the award by which any errors or imperfections in the proceedings which led up to it have been cured.

In the statement of facts at the beginning of this opinion, we have summarized the evidence upon this point. Only a short time elapsed between the rendition of the award and the deter-

mination upon the part of J. W. Coons to attack it by bill in equity. He was disposed, in the first place, to abide by it, and papers were prepared and steps taken looking to its execution, but nothing was consummated, and nothing was done which in any degree compromised or affected the right of H. C. Coons. There is nothing in the situation which invites a court to apply the doctrine of estoppel to the conduct of J. W. Coons, and what was done falls far short of an express ratification.

We are of the opinion that, for the failure upon the part of the arbitrators to notify the appellant of the appointment of the third arbitrator, and of their readiness to proceed with the case, thus affording him the opportunity to introduce evidence in support of his contention, the award should be vacated and annulled.

Having reached this conclusion it is unnecessary to discuss the other grounds of attack stated in the bill.

We will now consider the prayer of the cross-bill for relief. Every party in interest is before the court upon a bill to set aside an award upon grounds which unquestionably give a court of equity jurisdiction. This jurisdiction having once attached for the purpose of injunction, the court may decide the whole controversy, and render a final decree, though all the issues are legal in their nature, capable of being tried by a court of law, and the legal remedies therefor adequate. *Jesus College* v. *Bloom*, 3 Atkyns, 262; *Armstrong* v. *Gilchrist*, 2 John. Chan. Cases, 431; *People* v. *Chicago*, 53 Ill. 424; *Miller* v. *Wills*, *ante p.* 337, where the question was conclusively discussed by Judge Riely; and 1 Pom. Eq. Jur. sec. 236.

We are therefore of opinion that the decree of the Circuit Court of Culpeper county should be reversed, and the cause remanded, with instruction to refer it to a commissioner in chancery to ascertain in what property, real and personal, J. W. and H. C. Coons were jointly interested on the 27th day of May, 1892, and to state and settle all joint accounts existing between

them at that date, the commissioner to consider so much of the evidence set out in this record as may be pertinent to the inquiry directed, and any other evidence that the parties may desire to present.

*Reversed.*